RICHARD W. BAYLEY *et al. versus* NATHAN BRYANT.

In an action by a subsequently attaching creditor against the officer for applying the property attached in satisfaction of the execution of the prior attaching creditor, it was *held*, that the declarations of the latter, who had given the officer a bond of indemnity against the consequences of such application, were admissible in evidence, for the purpose of proving that the prior attachment was void, he being the real party in interest.

Where a debtor, at the time when the debt was incurred, promised to secure his creditor in case of difficulty, but the manner in which this was to be done was not agreed upon, and the debtor afterward, being in failing circumstances, caused his own property to be attached on the behalf of such creditor, but without his knowledge, in order to secure him, and the creditor, before he was informed of the attachment, had said, that if the debtor " did not secure him, he was a rascal," it was *held*, that the attachment was founded on a previous authority, or if not, that it was ratified by the creditor, and in either case it was valid against subsequent attachments in behalf of other creditors.

CASE against a deputy sheriff. The trial was before *Dewey* J.

It appeared, that on the 14th of December, 1836, the plaintiffs, having a demand then due against Elbridge G. Williams, sued out a writ, and on the next day delivered the same to the defendant to be served ; that at the time when this writ was received by the defendant, he had in his hands a writ issued in favor of Charles Randall against Williams, upon which he had, a few minutes previously, attached certain property of Williams ; that the plaintiffs forbade the defendant from appropriating the proceeds of the property attached, in satisfaction of the judgment which might be recovered by Randall, on the ground that the attachment made on his behalf was illegal and void ; that both Randall and the plaintiffs gave the defendant bonds conditioned to indemnify him from the consequences of applying the property attached in satisfaction of their respective claims, and within thirty days from the time when they, severally, recovered judgment, placed their executions in the defendant's hands to be served ; and that the defendant afterwards applied the proceeds of the property attached, upon the execution issued in favor of Randall, and returned the execution of the plaintiffs in no part satisfied.

The plaintiffs, in order to prove, that the attachment upon Randall's writ was void, offered in evidence, the written dec-

laration of Randall signed and sworn to in the form of a depo-
sition taken in the action brought by Randall against Williams,
in which the present plaintiffs, as after attaching creditors of
Williams, sought to vacate Randall's attachment.

The defendant objected to the admission of this evidence ; but the objection was overruled and the evidence admitted. By this deposition it appeared, that when Williams gave the note which was the subject of the action brought by Randall against Williams, he promised to secure Randall in case of difficulty, but that the manner or mode in which this should be done, was not stated ; that such action was procured to be brought by Williams ; and that Randall knew nothing of the action, until the day after the attachment was made in his behalf.

The defendant then introduced as a witness David Randall, a brother of Charles Randall, who testified, that Williams, about the time of his failure, called at the house of one Marsh, in Petersham, where the witness lived, and said, that there was trouble at Lunenburg, which was the place of Williams's residence, and requested Marsh to carry him to Worcester, in order to secure some debts, and desired the witness to tell his friends about it, but not to noise it about the neighbourhood ; that Williams did not name the persons whom he was going to secure ; that the witness told his brother Charles what Williams had said, and Charles replied, that it was no more than he expected, and that if Williams did not secure him, he was a rascal ; and that this conversation took place about the middle of the forenoon of the day after that on which Williams called at the house of Marsh. The plaintiffs objected to the competency of this testimony ; but it was admitted.

If the evidence introduced by the plaintiffs was competent, and if the Court should be of opinion, upon such evidence, that the plaintiffs were entitled to recover, the defendant was to be defaulted ; but if the Court should be of opinion, that such evidence was not competent, a new trial was to be granted.

*Washburn* and *Perry*, for the plaintiffs, to the point, that a
lien by attachment, like other liens, could not be acquired
without the knowledge and consent of the person in whose fa-

vor the attachment was made, cited *Harrison* v. *Phillip Academy,* 12 Mass. R. 456 ; 2 Kent's Comm. (1st ed.) 354 that the declarations of Charles Randall were competent evidence, he being in fact the party interested, *Tyler* v. *Ulmer,* 12 Mass. R. 166 ; *Dowden* v. *Fowle,* 4 Campb. 38 ; Roscoe on Evid. 452 ; 3 Stark. on Evid. 41, 42 ; that a subsequent ratification of the acts of Williams, by Charles Randall, would not avail against the intervening rights of third persons, Story on Agency, § 246 ; and that it was not competent for Williams to act as the agent of Randall in causing his own property to be attached, Story on Agency, § 9.

*Brooks,* for the defendant, to the point, that Randall's assent to the attachment made on his behalf, might be presumed, it being for his benefit, cited *Ward* v. *Lewis,* 4 Pick. 518 ; and that the attorney of the attaching creditor, and the officer by whom the attachment is made, may be regarded as the agents of such creditor, *Coverdale* v. *Wilder,* 17 Pick. 178.

Morton J. delivered the opinion of the Court. The judgment in this case must depend upon the validity of Randall's attachment. It was prior in time to the plaintiffs', and must prevail unless it be impeached. Being regular in form, it must be presumed to be effectual until the contrary be shown.

The objection to it is, that it was originally without authority and remained unauthorized at the time of the plaintiffs' attachment. The assent of the creditor is as essential to the validity of an attachment as to any other act. The mind of the party must enter into it, before it can have any legal effect. But most other acts may be done either by the party himself or by his agent. Not so with this. Although the party may make his own writ, yet the attachment of which it is the basis, can only be made by an officer duly appointed and qualified for the purpose. The attachment, therefore, is the act of the officer, and not of the party. The authority of the officer is his precept, and if this be valid, the attachment made upon it will be binding.

The burden of proof is undoubtedly upon the plaintiffs, to show that the precept in this case was not made by Randall, either by himself or his authorized agent. But, for this pur-

pose, no evidence can be better than the declarations, whether made under oath or not, of the adverse party. Randall, being the real, thought not the nominal, party, should not be called upon to testify. It would be inconsistent with the established rules of evidence, to require the one party to call upon the other to give evidence for him ; especially, where he had his own written confessions in the case. 2 Stark. Ev. 41 ; *Young* v *Smith*, 6 Esp. R. 121 ; *Dowden* v. *Fowle*, 4 Campb. 38 ; *Rex* v. *Whitley Lower*, 1 Maule & Selw 636 ; *Tyler* v. *Ulmer*, 12 Mass. R. 166.

The declarations of Randall in his deposition, tend to show that the process was unauthorized. He says he did not know of his own attachment till after the plaintiffs' was made. Whatever inference may be drawn from this, it does not necessarily imply, that he had not before made a writ, or employed some one to make it for him. And it is now contended in his behalf, that he duly employed an attorney to make the writ and to cause the attachment to be made upon it ; and if he did not, yet there was a ratification of it by him. And that both were done before the plaintiffs caused their attachment to be made.

The deposition of Randall being admitted for the plaintiffs, must be used as evidence in the case for the one party as well as the other. If the plaintiffs rely upon a particular part, whatever is explanatory of that part must be taken with it ; and it must all be construed together. From the deposition it appears, that when Williams gave his note to Randall, it was agreed between them, that in case of difficulty, Williams should secure Randall. Although the mode was not agreed upon, it cannot be doubted that a suit and an attachment were one of the modes contemplated. And as there was no other way in which Williams could secure Randall, without a new contract, and as the emergency might be too sudden to give time for a new negotiation or even a meeting of the parties, it must be presumed, that this was the mode relied upon in the last resort.

Williams, in pursuance of this agreement, did procure a writ and an attachment upon it. But it is objected, that he could not lawfully perform this service for Randall. It is con-

tended, that the relation of debtor and creditor is such as to preclude the former from being the agent of the latter for the purpose of procuring himself to be sued and his property attached. The principle is clear, that a man cannot be an agent to contract with himself; as, for instance, he cannot be both buyer and seller, although he acts in different capacities. The two characters are irreconcilable. The interests are adverse. Story on Agency, § 9 ; Paley on Agency, 33 ; *Lowther* v *Lowther,* 13 Ves. 103 ; *Litchfield* v. *Cudworth,* 15 Pick. 31, and cases there cited. But it is always competent for the principal to ratify the act of the agent, and a subsequent ratification is equivalent to a prior authority, and renders the act valid from the beginning. The only exception to the principle is, that intervening rights cannot be affected by the ratification.

Wherever there is a confidence or discretion vested in the agent, as there always must be in the contract of sale, the rule applies. But where the agency consists merely in the execution of specific directions, the reason of the rule ceases. In such case there is no exercise of judgment, which might be biassed by the relation, which the parties bore to each other. Here the debtor merely performed a definite act, which by agreement of parties he was empowered to do.

But the decisive answer to this objection is, that the debtor was no party to any contract, in relation to the attachment. He had no assent to give or withhold. The validity of the suit or the attachment, did not depend upon his agreement The authority emanated from the creditor. The debtor was the conduit, through which it passed. He was merely the bearer of the authority. It can make no difference who the bearer is, if it be faithfully borne. The debtor might be reluctant to perform the service ; but if the creditor chose to trust him, and he was faithful, the power cannot be impaired because he did it reluctantly, or acted against his own interest in doing it. Suppose the creditor had written to the attorney, giving the necessary directions, could it invalidate the authority, to send the letter by the debtor ? Clearly it could not. And whether the communication was oral or written, could make no difference.

But it is further objected, that the debtor had a discretion in this case, which it was incompetent for him to exercise

It is not easy to see how this, were it so, could be any objection to the agency. But we think the objection does not apply. He was to perform the service "in case of difficulty." He was authorized to act in a certain event. He must undoubtedly judge for himself when the event had happened. But his opinion had no effect upon the validity of his act. If the event happened, his authority became absolute, and as if no condition had been annexed. But in a question of the validity of his agency, he would not be the judge whether the contingency had occurred or not. It is not pretended that the contingency had not happened. And it stands precisely as if none had been imposed.

This case does not come within the general principle of agency, where a discretion is vested in the agent, or where he is to contract with himself, nor within the dangers intended to be guarded against by the rule in such cases. It is the plainest and simplest execution of a specific direction ; one which an infant or feme covert would be competent to perform. Co. Lit. 52 a ; *Emerson* v. *Blonden*, 2 Esp. R. 142 ; *Palethorp* v. *Furnish*, 2 Esp R. 511, note ; *Anderson* v. *Sanderson*, 2 Stark. R. 204. But even if this point were doubtful, and the original authority questionable, we think here is evidence from which a jury might infer a ratification. Before the plaintiffs' attachment, and after the commencement of the suit in Randall's name, he was informed of it. Upon which he used language strongly implying his approbation of what had been done ; "*If he did not secure him he was a rascal.*" What could be more expressive of his expectation that he should be secured, and his desire that an attachment should be made, and that it should be effectual ?

A ratification, though it must be evidenced by external demonstrations, is merely an act of the mind. It is a volition or determination to abide by and adopt the act of another. The validity of a ratification, where no act of another is founded upon it, does not depend upon its being communicated. The writ and the service of it, gave to all persons the notice required by law. If Randall's writ was valid when served, the attachment made under it cannot be questioned by any one ; nor is it material when it acquired its validity. On the

Bayley
*v.*
Bryant.

whole, we are inclined to think, that the defendant has established both grounds of his defence ; that the original writ was good ; but even if it was not, that the facts shown amount to an adoption and ratification of it.

*Verdict set aside and a new trial ordered.*